# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

FRANCINE GUARINO,                               )
                                                )
                         Plaintiff,             )          Case No.: 2:13-cv-02135-GMN-NJK
           vs.                                  )
                                                )                    **ORDER**
LAS VEGAS METROPOLITAN POLICE                   )
DEPARTMENT, a Political Subdivision of the )
STATE OF NEVADA; SHERIFF DOUGLAS                )
GILLESPIE, individually and as policy maker )
of Las Vegas Metropolitan Police Department; )
OFFICER SHANNON ROHRBAUGH,                      )
#9013; OFFICER M. LAYTHORPE, #5448;             )
OFFICER D. BROTHERSON, #4931;                   )
OFFICER K. COLLMAR, #6965;                      )
DETECTIVE J. BANGLE, #4677;                     )
DETECTIVE K. TOMASO, #6848;                     )
DETECTIVE D. FREEMAN #4487;                     )
DETECTIVE R. TUSKO, #4515; DOE                  )
POLICE OFFICERS I-XX; ROE                       )
CORPORATIONS I-X, and JOHN DOES I-X; )
inclusive,                                      )
                         Defendants.            )
_____)

     Pending before the Court is the Motion to Dismiss (ECF No. 5) filed by Defendants Las Vegas Metropolitan Police Department ("LVMPD") and Sheriff Gillespie ("Gillespie") (collectively "Defendants"), requesting dismissal of the *Monell* claim (Compl., Ex. B to Notice of Removal, ECF No. 1) filed by Plaintiff Francine Guarino ("Plaintiff") against LVMPD and the dismissal of Gillespie as a defendant.

## I.    BACKGROUND

    This case arises out of a traffic accident on May 8, 2013 between Plaintiff, a motorist, and LVMPD Officer Shannon Rohrbaugh ("Rohrbaugh"). (Compl., Ex. B to Notice of

Removal ¶¶ 14–18, ECF No. 1.)  Plaintiff alleges that after she drove through a green light, passing the intersection of Durango Drive and the Summerlin Parkway exit, Rohrbaugh ran the red light coming from the Summerlin Parkway exit and struck the front right of her vehicle with his motorcycle. (*Id.* ¶ 16.)  Officers Laythorpe, Brotherson, Collmar, Bangle, Tomaso, Freeman, and Tusko (collectively "Defendant Officers") investigated the scene and allegedly detained her for three and a half hours, refusing to let her speak to her boyfriend and daughter who were standing directly behind the police tape. (*Id.* ¶¶ 17–18.)

Plaintiff filed a Complaint alleging negligence, negligence per se, false imprisonment, and violation of her Fourth Amendment rights pursuant to 42 U.S.C. § 1983. (*Id.* ¶¶ 19–67.) Defendants subsequently filed the instant Motion to Dismiss (ECF No. 5), requesting that (1) Plaintiff's *Monell* claim against LVMPD be dismissed, and (2) Gillespie be dismissed as a defendant from this suit.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the Court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

The Court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action

with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is *plausible*, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

A court may also dismiss a complaint pursuant to Federal Rule of Civil Procedure 41(b) for failure to comply with Federal Rule of Civil Procedure 8(a). *Hearns v. San Bernardino Police Dept.*, 530 F.3d 1124, 1129 (9th Cir. 2008).  Rule 8(a)(2) requires that a plaintiff's complaint contain *only* "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Furthermore, the Supreme Court has already rejected any sort of "heightened" pleading requirement for § 1983 municipal liability claims because such a heightened pleading standard cannot be "square[d] . . . with the liberal system of 'notice pleading' set up by the Federal Rules." *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . . However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted).  Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

If the court grants a motion to dismiss, it must then decide whether to grant leave to amend. The court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment . . . ." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

III. **DISCUSSION**

  **A. Plaintiff's *Monell* Claim**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Additionally, if a plaintiff is seeking to establish that a municipal entity is liable for the alleged violation, then that plaintiff must also establish that the alleged violation was attributable to the enforcement of a municipal custom or policy. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) ("Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.").

In order for a municipality to be liable under *Monell*, the plaintiff must show: "(1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389–91 (1989)).

*Monell* claims are subject to the following pleading requirements: "Allegations in a complaint . . . may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable to opposing party to defend itself effectively." *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  Further, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.*; *see also Twombly*, 550 U.S. at 569 (2007) (claims must be "nudged … across the line from conceivable to plausible").

### 1.  Plaintiff does not show that she was deprived of a constitutional right.

Plaintiff alleges that she suffered, at the hands of LVMPD, "deprivation of liberty and/or false arrest and false imprisonment without due process of law in violation of the Fourth and Fourteenth Amendments." (Compl., Ex. B to Notice of Removal ¶ 51, ECF No. 1.)

The Fourth Amendment protects "[t]he right of the people … against unreasonable searches and seizures." U.S. Const. amend. IV.  To show that LVMPD violated this Fourth Amendment right, Plaintiff would have to demonstrate that her encounter with Defendant Officers constituted a "seizure" of her person. *See Florida v. Bostick*, 501 U.S. 429, 434 (1991). A Fourth Amendment violation occurs when an encounter between police and an individual "loses its consensual nature," i.e. when an officer uses "'physical force or show of authority'" to "'restrain[] the liberty of a citizen.'" *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 19, n.16 (1968)). "[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions.  So long as a reasonable person would feel free 'to disregard the police and go about his business,' the encounter is consensual and no reasonable suspicion is required." *Id.* (quoting *California v. Hodari D.*, 499 U.S. 621, 628 (1991)).

Rather than pleading specific factual allegations amounting to a violation of her Fourth Amendment right, Plaintiff makes conclusory statements about Defendant Officers' conduct.

She alleges that they treated her "like a criminal" and deprived her of her physical liberty when they "held" her at the scene of the accident for approximately three and a half hours and refused to allow her to speak to her boyfriend and daughter who were standing directly behind the police tape. (Compl., Ex. B to Notice of Removal ¶¶ 18, 50, 55, 62, ECF No. 1.)  These bare assertions leave open the question of whether Plaintiff was deprived her of her liberty by "physical force or show of authority," such that she reasonably believed that she was not free to leave. *See Bostick*, 501 U.S. 429, 434 (1991).

Because the Complaint contains insufficient factual allegations to plausibly infer that LVMPD's conduct was a "seizure" within the meaning of the Fourth Amendment, and thus to "plausibly suggest an entitlement to relief," it does not meet the pleading requirements for a *Monell* claim. *See Starr*, 652 F.3d at 1216.  At most, Plaintiff has pled that she was deprived of her right under Nevada's "stop and identify" statute (Nevada Revised statute 171.123) not to be detained by police for longer than 60 minutes if suspected of criminal behavior. (Compl., Ex. B to Notice of Removal ¶ 42, ECF No. 1); *see Hiibel v. Sixth Judicial Dist. Court of Nev.*, 542 U.S. 177, 182 (2004).

### 2.  Plaintiff does not show that LVMPD had a policy of committing violations of constitutional rights.

For a municipality to be liable under *Monell*, the plaintiff must show that it has a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690.  While the official custom or policy need not have "received formal approval through the body's official decisionmaking channels," a municipal entity cannot be held liable under § 1983 unless an action taken under that custom or policy caused a constitutional tort. *Id.* at 691; *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–168 (1970).  "[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in

other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691 (emphasis in original).

A policy "is a course of action consciously chosen from among various alternatives." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).  Policies can take several forms: an express policy, an unwritten policy or custom so established that it has the force of law, an act of the municipality's chief policymaker, or a municipality's failure to train its officers. *See, e.g., Tennessee v. Garner*, 471 U.S. 1 (police department's express policy authorizing use of deadly force against "apparently unarmed, nondangerous fleeing suspect[s]" was unconstitutional); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (a single act by a decision-maker with final authority can constitute a policy attributable to the municipality itself); *Harris*, 489 U.S. at 392 (city's failure to provide adequate police training may serve as basis for § 1983 municipal liability where "failure to train reflects deliberate indifference to the constitutional rights of [the city's] inhabitants"); *Tuttle*, 471 U.S. at 823 (plurality opinion) ("nebulous 'policy' of 'inadequate training'" cannot be inferred from a single shooting incident).

Prior to its decision in *Starr*, the Ninth Circuit did not "require[] parties to provide much detail at the pleading stage regarding such a policy or custom." *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012).  Now, however, a successful complaint must contain an "allegation of plausible facts supporting such a policy or custom." *Id.* at 637.

Here, Plaintiff relies on conclusory, tautological statements in an attempt to show that Defendant Officers acted pursuant to LVMPD policies.  She claims that Defendant Officers "were complicit in … violating the constitutional rights of Plaintiff through the use of unlawful detention even though Plaintiff had not committed a crime or was in any way resistant to their authority." (Compl., Ex. B to Notice of Removal ¶ 54, ECF No. 1.)  She claims further that these constitutional violations consist of "treating Plaintiff Francine Guarino like a criminal

when she was the victim of a car accident." (*Id.* ¶ 62.)  In her Response, Plaintiff reiterates, "LVMPD has unconstitutional policies, practices, and customs, including condoning constitutional violations," and "Defendant Gillespie condones constitutional violations and . . . Defendant Gillespie authorized the detention of Plaintiff." (Resp. 9:18-31, ECF No. 13.)  These statements, based on the single instance of Plaintiff's alleged detention at the scene of the accident, are too nebulous to serve as evidence of a municipal policy under *Monell*. *See Tuttle*, 471 U.S. at 822–23.  Without alleging some facts supporting LVMPD's "unconstitutional policies," Plaintiff has failed to nudge her claim across the line from conceivable to plausible. *See Twombly*, 550 U.S. at 569.

Plaintiff also has not established municipal liability under the theory of "Gillespie's and LVMPD's ratification of the [Defendant] Officers' unconstitutional conduct" because she states only that Gillespie "authorized" the "intentional use of an unlawful detention of Plaintiff" by his officers, without any factual basis. (Resp. 8:25–27, ECF No. 13; Compl., Ex. B to Notice of Removal ¶ 54, ECF No. 1); *see Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992). Because Plaintiff fails to allege sufficient facts indicating that she was deprived of her Fourth Amendment right and does not point to any specific LVMPD policy that led to her alleged deprivation, she has not shown the final two elements of a *Monell* claim: that this policy "amounts to deliberate indifference" of her rights and that the policy is the "moving force behind the constitutional violation." *See Oviatt*, 954 F.2d at 1474 (internal quotation marks omitted).  Therefore, Plaintiff's *Monell* claim must be dismissed.

### B. Dismissal of Sheriff Gillespie

In their Motion to Dismiss, Defendants also request that Gillespie be dismissed from the suit, both in his official and individual capacities. (Mot. to Dismiss 9:1–11:2, ECF No. 5.)

#### 1. Gillespie's liability in his official capacity

Plaintiff sues Gillespie in his official role as policymaker for LVMPD. (Compl., Ex. B to Notice of Removal ¶ 62, ECF No. 1.)  As Defendants point out, "[a] suit against a governmental officer in his official capacity is equivalent to a suit against the governmental entity itself." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991).  Both the Supreme Court and Ninth Circuit have recognized that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell*, 436 U.S. at 690 n.55; *accord Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dept.*, 533 F.3d 780, 799 (9th Cir. 2008) ("An official capacity suit against a municipal officer is equivalent to a suit against the entity.").  Plaintiff has brought a *Monell* claim against LVMPD that is duplicative with her claim against Gillespie in his official capacity.  Therefore, the Court dismisses with prejudice Plaintiff's claim against Gillespie in his official capacity as a "redundant defendant." *See Ctr. for Bio-Ethical Reform*, 533 F.3d 780 at 799.

### 2.  Gillespie's liability in his individual capacity

Plaintiff also sues Gillespie in his individual capacity as supervisor of Defendant Officers.  She claims that Gillespie is "directly liable for the acts of Defendant LVMPD Officers for failing to enforce the laws of the State of Nevada," and that he has "the duty and responsibility to implement and enforce the guidelines, procedures, and regulations of the LVMPD and to train and supervise the[ir] conduct … to ensure they are properly trained in the investigation and the detention of individuals." (Compl., Ex. B to Notice of Removal ¶¶ 61, 63, ECF No. 1.)

"A supervisor may be liable [under § 1983] if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).  While a supervisor need not be physically present at the scene of the

alleged constitutional injury, he may still be held liable for his "'own culpable action or inaction in the training, supervision, or control of his subordinates,' 'his acquiescence in the constitutional deprivations of which the complaint is made,' or 'conduct that showed a reckless or callous indifference to the rights of others.'" *Starr*, 652 F.3d at 1205–06 (quoting *Larez*, 946 F.2d at 646).

Per her statement that Gillespie "fail[ed] to enforce the laws of the State of Nevada," Plaintiff appears to allege supervisory liability for deliberate indifference. *See id.* at 1207–08. However, unlike the plaintiff in *Starr*, who alleged numerous specific instances of a sheriff's knowledge of and indifference to prison murders resulting from the "culpable actions of [his] subordinates," Plaintiff here does not make factual allegations amounting to Gillespie's knowledge of and indifference to Defendant Officers' unlawful "detention of individuals." *See id.* at 1216. Further, Plaintiff makes no causal connection between Gillespie's indifference and the violation of her Fourth Amendment right, other than a vague reference to his authorization of "constitutional violations treating [her] like a criminal." *See* (Compl., Ex. B to Notice of Removal ¶ 62, ECF No. 1.) Therefore, Plaintiff's claim against Gillespie in his individual capacity is dismissed.

### C.  Leave to Amend

Plaintiff requests, as an alternative to dismissal, that she be granted leave to amend her Complaint. (Resp. 5:20-6:14, ECF No. 13.)

Rule 15(a)(2) of the Federal Rules of Civil Procedure permits courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit "ha[s] held that in dismissing for failure to state a claim under Rule 12(b)(6), 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*,

203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

Here, the Court has no reason to believe that Plaintiff's "pleading could not possibly be cured by the allegation of other facts."  Therefore, the Court gives Plaintiff leave to amend her Complaint to include sufficient factual allegations supporting both her *Monell* claim and her claim against Gillespie in his individual capacity. *See Starr*, 652 F.3d at 1216.

## IV.   CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (ECF No. 5) is **GRANTED.**  Plaintiff's claim against Gillespie in his official capacity is dismissed with prejudice.  Plaintiff's *Monell* claim against LVMPD and her claim against Gillespie in his individual capacity are dismissed without prejudice, and Plaintiff is granted leave to file an Amended Complaint.  If Plaintiff wishes to file an Amended Complaint consistent with this order, she must do so by **Friday, August 15, 2014**; otherwise, Plaintiff's *Monell* claim against LVMPD and her claim against Gillespie in his individual capacity will be dismissed with prejudice.

**DATED** this __18__ day of July, 2014.

_____
Gloria M. Navarro, Chief Judge
United States District Judge